ALLSTATE INSURANCE
COMPANY, Plaintiff,

v.

Stanley J. OLES, Jr., Anthony Monti and Aleksandra Monti, individually and as parents with legal custody of Michelle Monti, an infant; Margaret Bachteler and Richard P. Bachteler, individually and as parents with legal custody of Janice M. Bachteler, an infant; Sally Johnson and Richard A. Johnson, individually and as parents with legal custody of Eric Johnson, an infant; Maryann Kulier, individually and as parent with legal custody of Timothy Kulier, an infant; Roman Musinski and Danuta Musinski, individually and as parents with legal custody of David Joseph Musinski, an infant; Chester Marcin and Susan Marcin, individually and as parents with legal custody of Diane Marcin, an infant; John Connolly and Susan Connolly, individually and as parents with legal custody of Shannon Connolly, an infant; Eugene McMahon and Mary McMahon, individually and as parents with legal custody of Heather Patricia McMahon, an infant; John Joseph Mulder, Jr. and Andrea Mulder, individually and as parents with legal custody of Catherine Laurie Mulder, an infant; Russell Brousseau and Diane Brousseau, individually and as parents with legal custody of Matthew Andrew Brousseau, an infant; Richard Pfaender and Lorraine Pfaender, individually and as parents with legal custody of Kimberly Ann Pfaender, an infant; Joseph Visconti and Bernadette Visconti, individually and as parents with legal custody of Andrew Visconti, an infant; Frank E. Patricolo and Georgette Patricolo, individually and as parents with legal custody of Michael Thomas Patricolo, an infant; William Damian Delaney, Sr. and Lorraine Josephine Delaney, individually and as parents with legal custody of William Damian Delaney, Jr., an infant; Rajan Abraham and Ann Abraham, individually and as parents with legal custody of Koshy Abraham, an infant; Harry Single Jr. and Susan Single, individually and as parents with legal custody of Brian Thomas Single, an infant; Allan Goodwin and Lois Goodwin, individually and as parents with legal custody of Tara Beth Goodwin and Kimberly Marie Goodwin, infants; Harran Transportation Company, Inc., Harran Transport School Bus Company, Hicksville Union Free School District, Diocese of Rockville Center/St. Ignatius Loyola Roman Catholic Church, Jerry Spiegel, and Jerry Spiegel Associates, Inc., Defendants.

CV 92–0247 (ADS).

United States District Court,
E.D. New York.

Nov. 13, 1993.

Strock & Strock & Lavan, New York City, by Joseph L. Forstadt, Tania B. Isenstein, for plaintiff.

Brancato, Brancato & Brancato, Garden City, NY by Joseph A. Brancato, for Stanley J. Oles, Jr.

Paul Burlant, Mineola, NY by Nancy Cicio, for Kulier, Bachteler, and Johnson.

Johnson, Tanner, Brecher, Feit & Heller, P.C., New York City by Jeffrey A. Manheimer, for Monti.

Charles F. Brennan, Rockville Centre, NY, for Musinski, Marcin, Connolly, McMahon, Mulder, Brousseau, Pfaender, Visconti, Patricolo, Delaney, Abraham, Single, and Goodwin.

Rivkin, Radler & Kremer, Uniondale, NY by James P. Nunemaker, for Harran Transport Co.

Martin, Clearwater & Bell, New York City by John Lyddane, for defendant Harran Transport Co.

Weber & Singer, Melville, NY by Keith Archer, for defendant Harran Transport School Bus Co.

Mulholland, Minion & Roe, Williston Park, NY by Robert Minion, for Diocese of Rockville Centre/St. Ignatius Loyola Roman Catholic Church.

Fiedelman & Hoefling, Jericho, NY by Elizabeth Pullman, for Jerry Spiegel & Jerry Spiegel & Assocs.

Guercio & Guercio, Plainview, NY by Gary Steffanata, for Hicksville Union Free School Dist.

Kroll & Tract, Mineola, NY by Tracy Starasoler, for Hicksville Union Free School Dist.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Allstate Insurance Company ("Allstate"), commenced this action seeking a declaratory judgment that Allstate does not have to defend or indemnify the defendant Stanley J. Oles, Jr. ("Oles") for any lawsuits arising out of the alleged sexual molestation of minors by Oles. Allstate moves for summary judgment seeking a declaration that the plaintiff Allstate "has no duty to defend

or indemnify the defendants for the conduct alleged in the underlying civil tort actions for which the defendant Stanley J. Oles, Jr. ("Oles") has filed a claim under an Allstate homeowners policy and personal umbrella policy, that plaintiff be permitted to withdraw its legal defense of the defendant Oles in the underlying civil tort actions, that plaintiff have recovery of the reasonable value of the legal services already provided, and for such further relief as the Court deems proper" (*Notice of Motion*, dated May 27, 1993). The defendant Hicksville Union Free School District is the only defendant to oppose this motion.

### BACKGROUND

The defendant Oles was insured by an Allstate Deluxe Homeowners Policy, Form AU9601, Policy Number 043425578 ("Homeowners Policy"), which was effective as of June 19, 1985 and renewed annually. In addition Oles was insured by an Allstate Personal Umbrella Policy, Form AU1762 ("Umbrella Policy"), which was effective as of January 25, 1988 and renewed annually.

The Homeowners Policy specifically provided, in the section titled "Family Liability and Guest Medical Protection", that "[w]e do not cover any bodily injury or property damage which may reasonably be expected to result from the *intentional or criminal acts of an insured person or which are in fact intended by an insured person*" (Homeowners Policy, at p. 23 [emphasis added]). Additionally, the Umbrella Policy provided that "Allstate will pay when an Insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence. *The personal injury or property damage must be unexpected or unintended*" (Umbrella Policy, at p. 4).

In the present case, the defendant Oles is being sued in state court by the legal representative of minors who allege that the defendant Oles participated in their sexual abuse. It is based upon this alleged intentional conduct by Oles that the plaintiff Allstate seeks a judgment declaring that it is not required to defend or indemnify Oles in the underlying state court actions. The plaintiff moves for summary judgment.

### DISCUSSION

### *Motion for Summary Judgment:*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," (*Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 [2d Cir.1990]·), and the movant is entitled to judgment as a matter of law (*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see also* Fed.R.Civ.P. 56[c] [summary judgment standard] ). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*See Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987] ).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict" (*United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 [2d Cir. 1993] ). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists (*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] [quoting Fed.R.Civ.P. 56[e]]; *see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989] ). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party" (*Liberty Lobby, Inc., supra*, 477 U.S. at p. 248, 106 S.Ct. at 2510; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990] ).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*See Western World, supra*, 922 F.2d at p. 121). If there is evidence in the record as to any

material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see United National, supra,* 988 F.2d at pp. 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 [2d Cir.1991]). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. Incomrx Sys. Ltd. Partnership,* 912 F.2d 23, 27 [2d Cir.1990]).

It is within this framework that the Court addresses the grounds for the present motion for summary judgment.

### Insurance Exclusion Clause:

The plaintiff bases its motion for summary judgment primarily on a decision by the New York State Court of Appeals which must be applied in this diversity case. The plaintiff asserts that *Allstate Insurance Co. v. Mugavero,* 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992), holds that acts of sexual molestation committed by an insured, such as Oles, are "intentional" acts and therefore excluded from coverage under the Homeowners Policy and the Umbrella Policy. Moreover, under such circumstances, the carrier need not defend the insured in such an action (*See Mugavero, supra,* 581 N.Y.S.2d at pp. 147–48, 589 N.E.2d at pp. 370–71).

■ As stated by the court in *Mugavero,* "Allstate cross-moved for summary judgment based, among other things, on the verified pleadings in the underlying damages action and on the sworn depositions of . . . [the children] depicting in graphic detail acts of sexual child molestation" (*Mugavero, supra,* 581 N.Y.S.2d at p. 144, 589 N.E.2d at p. 367). The Court stated that:

"[a]lthough Mugavero denies the allegations of the complaint, we must assume— for the purpose of determining coverage— that what is alleged actually happened. Allstate agrees that it is obligated by its policy to provide a defense unless it can 'demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation'" (*Mugavero, supra,* 581 N.Y.S.2d at p. 145, 589 N.E.2d at p. 368 [*quoting International Paper Co. v. Continental Casualty Co.,* 35 N.Y.2d 322, 325, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974)]).

Allstate asserts that Oles sought from Allstate, pursuant to his insurance policies, indemnification and defense in the state court proceedings involving the following infants: Janice M. Bachteler, Eric Johnson, Timothy Kulier, and Michelle Monti. To determine whether the plaintiff is entitled to disclaim coverage in this situation, the Court must start its analysis by examining the pleadings in the underlying state court actions (*Mugavero, supra,* 581 N.Y.S.2d at p. 144, 589 N.E.2d at p. 367). The pertinent portion of the underlying complaints are as follows:

#### Janice M. Bachteler

"81. Upon information and belief, between September, 1988, and, May 22, 1989, the Defendant, OLES, while in the course of his employment for the Defendant HARRAN, sexually and physically abused, assaulted and threatened the Infant Plaintiff, while the Infant Plaintiff was being transported upon the vehicle owned, maintained and/or leased by the Defendant, HARRAN, and operated by the Defendant IZZO.

82. That at such times that the Defendant OLES, so occupied the motor vehicle as aforementioned, he sexually and physically abused, assaulted, and threatened the Infant Plaintiff, while the Infant Plaintiff was being transported upon the vehicle owned, maintained and/or leased by the Defendant HARRAN, and operated by the Defendant IZZO and/or OLES.

84. Upon information and belief, the Defendant OLES, did not intend for the infant to suffer the consequences the infant suffered from his intentional acts; the Defendant OLES was negligent in committing acts against the infant resulting in an injury unintended to the infant" (Complaint of Janice M. Bachteler, at ¶¶ 81–84).

#### Eric Johnson

"81. Upon information and belief, between September, 1988, and May 22, 1989, the Defendant, OLES, while in the course of his employment for the Defendant

HARRAN, sexually and physically abused, assaulted and threatened the Infant Plaintiff, while the Infant Plaintiff was being transported upon the vehicle owned, maintained and/or leased by the Defendant, HARRAN, and operated by the Defendant IZZO.

82. That at such times that the Defendant, OLES, so occupied the motor vehicle as aforementioned, he sexually and physically abused, assaulted, and threatened the Infant Plaintiff, while the Infant Plaintiff was being transported upon the vehicle owned maintained and/or leased by the Defendant, HARRAN, and operated by the Defendant, IZZO and/or OLES.

84. Upon information and belief, the Defendant OLES, did not intend for the infant to suffer the consequences the infant suffered from his intentional acts; the Defendant OLES was negligent in committing acts against the infant resulting in an injury unintended to the infant" (Complaint of Eric Johnson, at ¶¶ 81–84).

### Timothy Kulier

"81. That at such times that the Defendant OLES, so occupied the motor vehicle as aforementioned, he sexually and physically abused, assaulted, and threatened the Infant Plaintiff, while the Infant Plaintiff was being transported upon the vehicle owned, maintained and/or leased by the Defendant HARRAN, and operated by the Defendant IZZO and/or OLES.

82. Upon information and belief, and at all times hereinafter mentioned the Defendant, OLES, although not authorized by the Defendant, HARRAN, did occupy a motor vehicle commonly known as a school bus, which motor vehicle was being operated by the Co–Defendant, IZZO.

83. Upon information and belief, the Defendant OLES, did not intend for the infant to suffer the consequences the infant suffered from his intentional acts; the Defendant OLES was negligent in committing acts against the infant resulting in an injury unintended to the infant" (Complaint of Timothy Kulier, at ¶¶ 80–83).

### Michelle Monti

"76. That upon information and belief and between September 1988 and May 22, 1989, the Defendant, OLES, while in the course of his employment for the Defendant, HARRAN, sexually and physically abused, assaulted, raped, sodomized and otherwise threatened the infant Plaintiff while the infant Plaintiff was upon the vehicle owned, maintained, and/or leased by the Defendant, HARRAN, and operated by the Defendant, OLES.

\*     \*     \*     \*     \*     \*

... The Infant was caused to be sexually abused, raped, sodomized, and otherwise physically injured. The infant was further threatened and placed in fear of bodily harm to the infants person and to family members by the Defendants ROBERT IZZO and STANLEY OLES, and other persons unknown to the Infant" (Complaint of Michelle Monti, at ¶ 76 and p. 31).

The actions alleged in the above four complaints clearly describe intentional conduct on the part of the defendant Oles. Although the complaints in the Bachteler, Johnson, and Kulier actions allege, in the alternative, that Oles did not intend the results of his actions and that he was acting negligently, the Court finds, as a matter of law that, notwithstanding the wording in the complaints, this verbiage could not properly allege a viable cause of action in negligence, within the coverage of the policy.

This same purported "negligence" argument was raised before the Court in *Mugavero* which disposed of the contention as follows:

"Ellen B's third cause of action—after repleading the factual allegations of intentional, forceful and violent assault, sodomy and sexual abuse contained in the first and second causes of action—sets forth the totally inconsistent assertion that these intentional acts were committed 'negligently and carelessly, and with wanton disregard of others.' *No different or additional facts are pleaded. Nor do any of defendants' motion papers suggest that there is the least evidentiary support for the conclusory characterization of Mugavero's conduct*

*as negligent or provide an explanation of how the intrinsically intentional acts of assault, sodomy and sexual abuse could be negligently performed.* We agree with plaintiff Allstate that the third cause of action contains nothing which brings the complaint within the coverage of the policy" (*Mugavero, supra,* 581 N.Y.S.2d at p. 148, 589 N.E.2d at p. 371 [emphasis added]).

In the present case, as in *Mugavero,* there are no additional allegations suggesting that there is any claim of negligent conduct on the part of the defendant Oles. In fact, additional documentation supplied by the plaintiff presents substantial evidentiary support vitiating any "negligence" claim:

### Eric Johnson—Bill of Particular

"The Infant was caused to be sexually abused, raped, sodomized, and otherwise physically injured. The infant was further threatened and placed in fear of bodily harm to the infants person and to family members by the Defendants ROBERT IZZO and STANLEY OLES, and other persons unknown to the Infant Plaintiff" (Bill of Particulars for Eric Johnson, at p. 31).

### Timothy Kulier—Bill of Particulars

"The Infant was caused to be sexually abused, raped, sodomized, and otherwise physically injured. The infant was further threatened and placed in fear of bodily harm to the infants person and to family members by the Defendants ROBERT. IZZO and STANLEY OLES, and other persons unknown to the Infant Plaintiff" (Bill of Particulars for Timothy Kulier, at p. 31).

### Michelle Monti—Bill of Particulars

"The acts of sexual abuse, rape, sodomy and other acts were performed by the co-defendants, ROBERT IZZO and STANLEY OLES" (Bill of Particulars for Michelle Monti, at p. 6).

\*  \*  \*  \*  \*  \*

"Said co-defendant STANLEY OLES drove the school bus while the co-defendant ROBERT IZZO performed the immoral sexual acts upon the infants and aided and abetted the said co-defendant ROBERT IZZO in the performance of said sexual acts" (*Id.* at p. 90).

\*  \*  \*  \*  \*  \*

23. The co-defendants IZZO and OLES were involved in the sexual abuse of the infant plaintiff herein" (*Id.* at p. 97).

### Michelle Monti—Supplemental Bill of Particulars

"The events described herein consisted of the co-defendant, ROBERT IZZO and/or co-defendant, STANLEY OLES, sexually touching, raping, sodomizing, slapping, hitting and otherwise physically and verbally abusing the infant Plaintiff and the other infants upon the school bus upon the Defendant SEARS premises. Co-Defendants, IZZO and OLES, caused the children to have sexual interplay amongst each other and with the Defendants IZZO and OLES, while the bus was upon the premises of SEARS ROEBUCK & CO. The aforementioned school bus would park upon the Defendant's premises between the hours of 12:05 P.M. and 1:00 P.M. on school days and, more specifically, on the dates previously set forth herein when the said acts would be perpetrated upon the children. The Defendant, OLES, would park the school bus in various locations within the parking lot, between tractor-trailer trucks and other vehicles, thereby attempting to isolate the school bus where some of the acts were performed" (Supplemental Bill of Particulars of Michelle Monti, at p. 4).

### Janice M. Bachteler—Examination Before Trial

Q  Did he take all of the children off the bus or some of the children?

A  All of the children.

Q  Once you were inside the house, what did you do?

A  We started taking our pants off.

Q  Did someone tell you to do this?

A  Yes.

Q  Who told you to do this?

A    Stanley [Oles].

Q    Do you know what Stanley looked like?

A    I forget.

Q    Did you at some point know what he looked like?

A    No.

\*        \*        \*        \*        \*        \*

Q    Did you ever see Stanley take any pictures of the children or of you or anyone else on the bus?

A    Yes.

Q    When did you see Stanley take pictures?

A    I think it was on the bus.

Q    What did he take pictures of?

A    The kids.

Q    What were the kids doing when he took pictures of them?

A    I forget.

Q    Were they wearing clothes?

A    No.

Q    Did he take picture once or more than once?.

A    Once.

Q    Where was the bus when he took those pictures?

A    The bus was at Sears.

Q    Was Bob Izzo also on the bus?

A    No.

Q    Had Stanley told the children to take their clothes off?

A    Yes.

Q    Do you know when this occurred?

A    No.

Q    Can you describe the camera that Stanley used to take the pictures with?

A    It was a video camera.

Q    I think before you testified that Stanley used the video camera once on the bus in order to tape something outside of the bus?

A    Yes.

Q    So this was a separate time when Stanley had used the video camera, a second occasion?  (Transcript of Examination Before Trial of Janice Bachteler, at pp. 183, 187–88).

**Eric Johnson—Examination Before Trial**

Q    You said something before about Stanley [Oles] having a camera;  can you tell us more about that?

A    He was taking movie picture of me and Janice.

Q    Do you remember where that happened?

A    On the bus.

Q    Do you remember where the bus was when that happened?

A    In the back of the bus.

Q    You were in the back of the bus; you were on the bus in the back, right?

A    Yes.

Q    Do you remember where the bus was; was the bus moving or was it parked?

A    Parked.

Q    Do you remember where it was parked?

A    On the side of the road.

Q    Who else was on the bus?

A    Brian Single, Koshy, Michelle Monti, Brian Single, Timothy Kuller, that's it.

Q    Were there any other grown-ups on the bus besides Stanley?

A    No.

Q    Do you remember what the camera looked like?

A    Like a movie camera.

Q    How big was it?

A    About like that.

Q    About fifteen inches long?

THE COURT:  So indicated.

Q    Was there anything attached to it other than the camera itself?

A    The metal rods on the bottom.

Q    So it could stand up by itself?

A    Yeah.

Q    Where was the camera?

A    In the back of the bus.

Q    You and Janice were in the back of the bus, right?

A    Yeah.

Q    Where was Stanley?

A    Taking pictures of me and Janice.

Q   Was Stanley touching the camera?

A   Yeah.

Q   What were you and Janice doing?

A   He was taking a picture of me and Janice putting my private in Janice's butt.

Q   This is at a different time than what you told us about before?

A   Yeah.

Q   Did you have clothes on or off then?

A   Off.

Q   All your clothes off?

A   Yeah.

Q   Do you remember what time of the year was; was it warm outside or was it a cold time of the year?

A   It was a warm time of the year.

Q   Was it early in the year when it's still warm or was it after summer, late in the year when it's still warm out or what?

A   Warm, like in the spring (Transcript of Examination Before Trial of Eric Johnson, at pp. 45–47).

### Timothy Kuller—Examination Before Trial

Q   You said that Stan [Oles] used to do the same things that Bob did; tell me more about that.

A   He always—

He sometimes touched us and sometimes Stan would do what Bob did and Bob would stay there laughing.

Q   You said that Stan touched you; tell me what you mean by touching you?

A   He was doing the same things as Bob.  He was touching us in the private sometimes or sometimes Bob would take pictures when he did it.

\*      \*      \*      \*      \*      \*

Q   How many times did you see that camera on the bus?

A   A couple of times—sometimes he had it in the first aid kit and one time we caught Stan going in there for the camera.

Q   Do you remember how many times you saw people taking pictures on the bus or around the bus?

A   No.

Q   Was it more than once?

A   Yes, I think it was.

Q   Did anyone ever take pictures of you?

A   Yeah.  I was absent the day that he took the pictures, but then he did it and then he got me.

Q   How do you know he took pictures when you were absent?

A   Because I saw them, because he showed everybody them—pictures.

Q   What did you see when you saw the pictures?

A   The kids naked and Stan and Bob doing it or just naked by themselves.

Q   Bob showed you pictures of the children naked?

A   Yeah.

Q   You remember which children were naked?

A   I think it was every child but me because I was absent that day.

Q   Was Bob in any of the pictures?

A   Yeah, I think a couple of them.

Q   What did you see in the pictures when you saw Bob there?

A   Him.  Him touching everybody else and sometimes Stan doing it.

Q   Stanley was in the pictures too?

A   Yeah.

Q   When you say they were touching everybody, what were they doing?

A   Touching their privates and stuff.

Q   With what?

A   Their hands.

Q   Do you ever remember anybody taking your picture?

A   Yeah.

\*      \*      \*      \*      \*      \*

A   ... Seat and then hang up the sheets and then he said, "I'm going to do the front today" or he said "You are going to it and now do the back."

Q   How long did it take to hang all these sheets up?

A   Two minutes.

Q   Did you ever, after the sheets were all hung up, remember any sheets being

hung anyplace else other than right at the windows?

A   No.

Q   Was there ever any sheets hung across from one side of the bus to the other side?

A   No.

Q   Do you ever remember any other grown-ups being on the bus when the sheets were up other than Bob?

A   Stan was—no other grown-ups.

Q   Did Stan do anything when they were putting the sheets up?

A   Stan would wait.  Then him and Bob would start touching us.

Q   When "him and Bob would start touching us," what do you mean by that?

A   Well, they'd start touching us in the private and stuff and then, when there was a stop coming, he told us either to duck down or put back on all our clothes.

Q   So when the bus was moving, sometimes you had some of your clothes off?

A   Yeah.

Q   What clothes did you have off when the bus was moving?

A   I think our pants and—some people didn't have off any.  Some kids had off their underwear and tee shirts already.

Q   Was that before any of the children were dropped off or was it in between bus stops?

A   It was between bus stops.

Q   So sometimes when you pulled up to somebody's bus stop to let somebody off, there were children on the bus that didn't have clothes on?

A   Yeah (Transcript of Examination Before Trial of Timothy Kuller, at pp. 63, 65–66, 76–77).

Based upon the evidence presented by the plaintiff Allstate, including those deposition portions excerpted above, there is ample, uncontested support for the assertion that the conduct of Oles was intentional.

■   Further, there is no evidence that any of the actions taken by the defendant Oles, with respect to the infants, Janice M. Bachteler, Eric Johnson, and Timothy Kuller, constituted negligence.  In fact, this Court,

as in *Mugavero*, finds that, as a matter of law, it cannot characterize the acts of assault, rape, sodomy, and sexual abuse alleged in this action as anything other than intentional conduct (*See United National Insurance Co. v. The Tunnel, Inc.*, 988 F.2d 351, 353 [2d Cir.1993] [finding "negligence" not synonymous with "intentional action"] ).

Unlike the conduct at issue in the present case, the New York Court of Appeals in *Allstate Insurance Co. v. Zuk*, 78 N.Y.2d 41, 571 N.Y.S.2d 429, 430–31, 574 N.E.2d 1035 (1991), examined a situation in which Allstate sought to disclaim coverage on an insurance policy based upon the conviction of the insured for manslaughter.  The policy at issue in the *Zuk* case excluded coverage for "bodily injury or property damages which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person" (*Zuk, supra*, 571 N.Y.S.2d at p. 430, 574 N.E.2d at p. 1036).  The court in *Zuk* stated that a criminal conviction for manslaughter does not automatically establish that the actions of the insured were reasonably expected to result in death.  According to the Court of Appeals "[a] person may engage in behavior that involves a calculated risk without expecting—no less reasonably—that an accident will occur.  Such behavior, which may be reckless for criminal purposes, does not necessarily mean that the actor reasonably expected the accident to result" (*Zuk, supra*, 571 N.Y.S.2d at p. 432, 574 N.E.2d at p. 1038)

In the present case, after reviewing all of the evidence supporting the motion for summary judgment, the Court finds that there is no material triable issue of fact with regard to the conduct by the defendant Oles.  The facts of this case are different from a situation in which a person commits an act which unintentionally, or recklessly, results in the death of another and is convicted for manslaughter (*See Zuk, supra*, 571 N.Y.S.2d at p. 432, 574 N.E.2d at p. 1038).

The underlying legal proceedings at issue in this case allege that the minors were subjected to sexual abuse, rape, and sodomy and these acts, criminal in nature, constitute

intentional conduct, as a matter of law (*Mugavero, supra,* 581 N.Y.S.2d at p. 148, 589 N.E.2d at p. 371).

Accordingly, Allstate is entitled to a declaration that it does not have to defend or indemnify Oles under either his Homeowners Policy or Umbrella Policy in the state court actions commenced on behalf of the infants Michelle Monti, Janice M. Bachteler, Eric Johnson, and Timothy Kulier. In addition, the plaintiff Allstate may withdraw its legal defense of the defendant Oles in those underlying civil tort actions.

 In addressing the recovery of attorney's fees, the Court notes that *Mugavero,* the main case relied upon by Allstate, does not address the issue of recovery of reasonable attorney's fees after counsel is permitted to withdraw as a result of a finding that the insurance coverage is excluded due to the intentional conduct of the insured. Additionally, none of the parties address this issue in any of the papers. In an independent review of the law, the Court was unable to locate binding precedent requiring the awarding of reasonable attorney's fees to Allstate in this type of situation. Accordingly, the Court declines to award the reasonable value of the services rendered by Allstate's attorneys.

### CONCLUSION

Based upon the foregoing, the plaintiff Allstate's motion for summary judgment pursuant to Fed.R.Civ.P. 56 is granted to the extent of declaring that Allstate does not have to indemnify or defend the insured Stanley J. Oles, Jr. in the state court actions involving the following infant plaintiffs: Bachteler, Johnson, Kulier, and Monti.

In addition, counsel furnished by Allstate already representing Oles in the above actions may withdraw, provided that such counsel comply with any requirements imposed by the New York State Supreme Court for the withdrawal of counsel. The motion for summary judgment seeking the payment of the reasonable value of the attorney's services for representation in the above actions is denied.

The plaintiff is directed to inform the Court within ten (10) days from the date of this decision as to the status of this action with regard to the other named defendants, who are not addressed in this motion for summary judgment.

The Clerk of the Court is advised that no final judgment shall be entered in this case until the above action is resolved as to all named defendants, or until further Order of the Court.

**SO ORDERED.**