[759 NYS2d 110]

GREGORY V. SERIO, as Superintendent of Insurance of the State of New York, Appellant, v PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Respondent.

Second Department, April 21, 2003

APPEARANCES OF COUNSEL

*Shayne, Dachs, Stanisci, Corker & Sauer*, Mineola (*Norman H. Dachs* of counsel), for appellant.

*Stuart M. Herz*, Garden City, for respondent.

### OPINION OF THE COURT

S. MILLER, J.

On this appeal we address a matter of great importance concerning the apportionment of liability between successive insurers for losses caused by a child's exposure to lead paint. Where the exposure occurred over a period of three years, and where the two insurers covered that loss, respectively, during consecutive periods of two and one years, we hold that each insurer shall bear a share of liability for the purpose of funding their negotiated settlement with the injured parties, directly proportionate to each insurer's time on the risk.

I

The genesis of this appeal was a loss that occurred in a 100-unit residential apartment building located at 1925 Adam Clayton Powell Boulevard in Manhattan. As alleged in the personal injury complaint in the underlying action, commencing September 23, 1993, the infant plaintiff was exposed to peeling lead paint in apartment 5H of the subject building.

The subject building was one of many owned by Graham Court Owners Corp., covered by the relevant insurance policies. Coinciding with the period of lead-paint exposure, the defendant, Public Service Mutual Insurance Company (hereinafter Public Service Mutual), provided $1 million in liability coverage for two consecutive one-year terms from June 1, 1993, through June 1, 1995. First Central Insurance Company (hereinafter First Central), provided identical coverage for the period June 29, 1995, to June 29, 1996. First Central was liquidated by order dated April 24, 1998, and its interests are now being administered by the plaintiff State Insurance Superintendent Gregory Serio (hereinafter the Superintendent).

On or about March 19, 2001, the parties to the underlying personal injury action reached a stipulation of settlement pursuant to which the infant plaintiff and her mother would receive the principal sum of $390,000. However, the two insurers further agreed to reserve their rights to seek a judicial determination as to their proportionate contribution obligations.

## II

By summons and verified complaint, the Superintendent, on behalf of First Central, commenced this action in Supreme Court, Nassau County, for a judgment declaring the parties' respective payment obligations. The complaint pleaded the facts underlying the consecutive policies issued by the parties, and noted that they contained identical provisions concerning "other insurance" and "methods of sharing." The complaint set forth the facts that Public Service Mutual's policies insured against, inter alia, lead-paint exposure liability for two of the three relevant years, whereas First Central's policy covered only one relevant year. Finally, the complaint pleaded the parties' irreconcilable assertions as to each insurer's liability; i.e., that Public Service Mutual claimed to be liable for only one half of the settlement while First Central was liable for the other half, whereas First Central claimed it should bear only one-third liability with Public Service Mutual bearing two-thirds responsibility. The complaint prayed for a declaration apportioning liability one third as against First Central, and two thirds as against Public Service Mutual.

Public Service Mutual interposed a verified answer which, in essence, confirmed the nature of the dispute, but asked that the Supreme Court declare an equal apportionment of liability.

## III

By notice of motion dated December 5, 2001, First Central moved for summary judgment declaring that it was only liable for one third of the settlement. In support of its motion, First Central argued, inter alia, that equal apportionment of liability under the circumstances at bar would be contrary to the then-recent decision of the United States Court of Appeals, Second Circuit, in *Olin Corp. v Insurance Co. of N. Am.* (221 F3d 307 [2000]), which allocated the liability of successor insurers for long-term pesticide contamination in a manner directly proportionate to the number of years each insurer's policy was in effect (*see also Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.*, 73 F3d 1178 [2d Cir 1995], *mod on denial of reh* 85 F3d 49 [2d Cir 1996]). First Central noted that the Second Circuit had taken its lead from the seminal New Jersey Supreme Court case of *Owens-Illinois, Inc. v United Ins. Co.* (138 NJ 437, 650 A2d 974 [1994]), which established the rule that a fair method of allocation is the one " 'related both to time on the risk and the degree of risk assumed' " (*Olin Corp. v Insurance Co. of N. Am., supra* at 325, quoting *Stonewall Ins. Co. v Asbestos Claims*

*Mgt. Corp., supra* at 1203, quoting *Owens-Illinois, Inc. v United Ins. Co., supra,* 138 NJ at 479, 650 A2d at 995). Here, First Central asserted, given that Public Service Mutual had twice the "time on the risk," it should bear twice the liability.

First Central predicted that Public Service Mutual would argue to the contrary on the strength of the decision of the Appellate Division, First Department, in *American Empire Ins. Co. v PSM Ins. Cos.* (259 AD2d 341 [1999]), wherein three insurers were embroiled in a controversy over liability for a settlement of a lead-paint exposure case. In that case, the insurers agreed to equally fund a $500,000 settlement and then litigate the issue of proportionate reimbursement. The First Department held equal apportionment to be appropriate in accordance with the "other insurance" provisions of the policies. First Central pointed out, however, that the *American Empire* decision focused on issues of what event "triggered" coverage, rather than on the issue of time on the risk. First Central thus suggested that *American Empire* was not on point, and that the subsequent Second Circuit decisions in *Olin* and *Stonewall,* neither of which cited *American Empire,* provided the appropriate analytical approach. Thus, First Central prayed that the Supreme Court would grant its motion and declare it responsible for only one third of the settlement, to Public Service Mutual's two-thirds responsibility.

In response, Public Service Mutual cross-moved, inter alia, for summary judgment declaring the parties to be each liable to pay one half of the settlement. Public Service Mutual acknowledged that the medical evidence established that the infant plaintiff was exposed to lead paint during the period of both the Public Service Mutual and the First Central policies. Public Service Mutual argued that this sequence of events was identical to that presented by the *American Empire* case, in which the First Department held equal apportionment to be appropriate. Public Service Mutual argued that the *American Empire* decision, which was the only state court decision on point, was dispositive of the instant matter, and that *Olin* and *Stonewall* were inapposite. Significantly, Public Service Mutual asserted that no lead-paint case had ever applied a "time on the risk" analysis, and while such analysis might be warranted in other cases like *Olin* and *Owens-Illinois,* it had no bearing on the instant lead-paint exposure case. Accordingly, Public Service Mutual argued that pursuant to the rule of *American Empire,* Public Service Mutual's cross-motion for summary judgment should be granted, First Central's motion should be

denied, and the Supreme Court should declare that Public Service Mutual was obligated to pay only one half of the $390,000 settlement.

## IV

The Supreme Court denied First Central's motion, and granted that branch of Public Service Mutual's cross motion which was for summary judgment declaring that it was only obligated to pay one half of the settlement. The Supreme Court determined that in the absence of contrary precedent from the Appellate Division, Second Department, it was bound by the First Department's *American Empire* decision apportioning liability equally.

First Central now appeals from so much of the order as denied its motion for a declaration of pro rata apportionment, and which apportioned liability equally. We reverse insofar as appealed from by First Central.

## V

On appeal, First Central argues that the Supreme Court erred in rejecting the time on the risk analysis embraced by the Second Circuit, while Public Service Mutual maintains that the First Department's *American Empire* equal-apportionment rule was correctly employed.

The allocation issue was much more difficult when the Supreme Court dealt with it than it is today. The order on appeal, relying upon the *American Empire* decision, was rendered March 6, 2002. However, on May 2, 2002, the Court of Appeals rendered a decision that implicitly overruled *American Empire* insofar as relevant to the instant matter.

In *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.* (98 NY2d 208 [2002]), the Court of Appeals adopted a "time on the risk" analysis in a case involving the cleanup of toxic substances that had leaked into the soil and ground water over a period of 60 years at a former Consolidated Edison plant in Tarrytown. A succession of 24 insurers had provided coverage over the years, and it was impossible to pinpoint the exact times of the contamination vis-à-vis the terms of the various insurers' policies.

The Court of Appeals observed that: "Where, as here, an alleged continuous harm spans many years and thus implicates several successive insurance policies, courts have split as to whether each policy is liable for the entire loss, or whether each policy is responsible only for a portion of the loss. This is

a matter of first impression for this Court, though federal courts have predicted New York's answer" (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co., supra* at 221, citing, inter alia, *Olin Corp. v Insurance Co. of N. Am., supra*).

The Court of Appeals explained that Consolidated Edison sought "joint and several allocation" pursuant to which it was free to collect all its damages from any one of the liable insurers, leaving the insurers to fight out issues of indemnification and contribution. The Court of Appeals rejected this argument and adopted a "pro rata allocation" based upon the language of the policies providing that each was to pay for losses arising *"during the policy period"* (*Consolidated Edison Co. of N.Y. v Allstate Ins. Co., supra* at 224, citing *Olin Corp. v Insurance Co. of N. Am., supra*). The Court of Appeals expressly approved the Supreme Court's use of the "time on the risk" rule employed by the Second Circuit in *Olin*.

Public Service Mutual argues that the *Consolidated Edison* decision is distinguishable since that case dealt with soil and ground water contamination, and not lead-paint exposure. While these are factual distinctions, they are distinctions without a difference. In both cases, the losses arose as a result of exposure to harmful substances over extended periods of time during which successive insurers issued policies covering the losses. Clearly, in the absence of any policy provisions to the contrary, and with no ability to pinpoint exactly when the insured event occurred, the most equitable means of apportioning the liability for the losses is in direct proportion to each insurer's time on the risk.

Because we are of the opinion that *Consolidated Edison* implicitly overruled *American Empire* insofar as is relevant to this case, we need not discuss that case in detail. We note, however, that the apportionment issue in *American Empire* was decided upon an analysis of when each policy was triggered, and in recognition of the equal apportionment required by the "other insurance" clauses of the policies. Unlike *American Empire*, the instant case presents no "triggering" issue. The instant case presents a single, narrow issue; how shall two insurers apportion liability as between themselves, for a continuing loss that occurred during both of their consecutive policy periods. *American Empire* did not decide this apportionment issue, and thus *American Empire* does not compel equal apportionment under the facts at bar.

*Consolidated Edison* also is factually distinguishable from the instant matter insofar as it posed the issue of whether

prorated apportionment or joint and several apportionment was appropriate, whereas the instant case pits prorated apportionment against equal apportionment. Nevertheless, the reasoning of the *Consolidated Edison* decision is clearly applicable. The loss herein occurred over three years and Public Service Mutual was "on the risk" for two of the three. Therefore, Public Service Mutual rightly bears two thirds of the liability for the settlement.

The instant case is the first lead-paint case in New York to employ a time on the risk analysis. However, one federal court employed a time on the risk analysis in a closely analogous matter involving successive insurers covering lead-paint injuries *(see Scottsdale Ins. Co. v American Empire Surplus Lines Ins. Co.,* 811 F Supp 210 [D Minn 1993]). There, the infant plaintiff moved from one lead-paint contaminated apartment to another over a period of approximately 3½ years. The apartments were insured by successive insurers who conceded joint liability via a settlement, and then litigated the issue of apportionment. The United States District Court for the District of Minnesota determined that each insurer's coverage had been triggered by exposure plus injury, and apportioned liability as between the insurers, based upon their respective times on the risk. Additionally, in *NL Indus., Inc. v Commercial Union Ins. Co.* (926 F Supp 446 [D NJ 1996]), in advance of any determination of liability, the United States District Court for the District of New Jersey ruled that two insurers would bear defense costs against lead-poisoning claims in direct proportion to their respective times on the risk.

There is a paucity of case law employing a time on the risk analysis to injuries caused by exposure to lead paint. Of greater significance, however, is the fact that we have not found a single lead-paint case that has ever expressly *rejected* the use of a time on the risk analysis. Time on the risk is apparently a comparatively new method of apportioning liability between successive insurers, one that is gaining acceptance among state and federal courts in other analogous situations.

In *In re Silicone Implant Ins. Coverage Litig.* (652 NW2d 46 [Minn 2002]), the Minnesota Court of Appeals adopted a time on the risk analysis to apportion liability as between numerous concurrent excess and consecutive insurers answerable for personal injury claims against 3M, arising from the seven-year period during which 3M sold silicone breast implants. In *Mayor & City Council of Baltimore v Utica Mut. Ins. Co.* (145 Md App 256, 802 A2d 1070 [2002]), the Maryland Court of Appeals

employed a time on the risk analysis to apportion liability between concurrent and consecutive insurers of a contractor responsible for the installation of asbestos insulation in city-owned buildings through the mid-1970s (*see also In re Wallace & Gale Co.,* 284 BR 557 [2002]).

New Jersey's courts have long applied a time on the risk analysis to cases involving successive liability for environmental harm (*see Quincy Mut. Fire Ins. Co. v Borough of Bellmawr,* 172 NJ 409, 799 A2d 499 [2002] [toxic leachate from municipal landfill]; *Owens-Illinois, Inc. v United Ins. Co.,* 138 NJ 437, 650 A2d 974, *supra* [asbestos]; *Champion Dyeing & Finishing Co., Inc. v Centennial Ins. Co.,* 355 NJ Super 262, 810 A2d 68 [2002] [leakage of fuel oil]). Indeed, the time on the risk method of allocating liability between insurers is regarded as the least arbitrary, most equitable method, fostering forseeability in underwriting and providing for uniformity of results (*see Reliance Natl. Indem. Co. v Lexington Ins. Co.,* 2002 WL 31409576, *6 n 3, 2002 US Dist LEXIS 20629, *17 n 3 [ND Ill, Oct. 23, 2002]).

In this case, Public Service Mutual has not advanced a single, genuinely persuasive argument not to apportion its liability with First Central in direct proportion to each insurer's time on the risk. Clearly, this is the most equitable measure of each insurer's liability. Each insurer undertook to insure against, inter alia, lead-paint injuries during a particular policy period. Each insurer should thus be responsible for paying its share of the loss that arose during their respective policy periods. This is a simple and just solution to this straight-forward controversy. Accordingly, we hold that each insurer shall bear pro rata responsibility for funding the settlement, in direct proportion to each insurer's time on the risk.

Since this is a declaratory judgment action, the matter must be remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that the plaintiff is obligated to pay one third of the underlying settlement, and the defendant is obligated to pay two thirds of the underlying settlement (*see Lanza v Wagner,* 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]).

Accordingly, the order is reversed insofar as appealed from, on the law, the motion is granted, the branch of the cross motion which was for summary judgment declaring that the parties are obligated to pay equal shares of the underlying settlement is denied, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring

that the plaintiff is obligated to pay one third of the underlying settlement, and the defendant is obligated to pay two thirds of the underlying settlement.

FLORIO, J.P., CRANE and MASTRO, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, the motion is granted, the branch of the cross motion which was for summary judgment declaring that the parties are obligated to pay equal shares of the underlying settlement is denied, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment declaring that the plaintiff is obligated to pay one third of the underlying settlement, and the defendant is obligated to pay two thirds of the underlying settlement.