STATE OF NEW YORK INSURANCE DEPARTMENT, LIQUIDATION BUREAU, Respondent, v GENERALI INSURANCE COMPANY, Appellant, et al., Defendant. [844 NYS2d 13]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered on or about April 12, 2006, which, in this action seeking contribution for plaintiff's defense and settlement of the underlying personal injury claim, to the extent appealed from, granted plaintiff's cross motion for summary judgment as against defendant Generali Insurance Company and directed that judgment be entered against Generali in the amounts of $23,302.42 and $210,191.08, plus interest, affirmed, without costs.

In 1993, two children and their mother instituted an action to recover damages caused by their exposure to lead paint. Rosan Realty Corp., an owner of the premises where the alleged exposure occurred, was named as a defendant. During Rosan's ownership of the premises, it was insured for the risk at issue by Generali for 5.5 months, and by Transtate Insurance Company for 10.2 months. The coverage provided by the two insurers was discontinuous, and for much of the risk period at issue in the lawsuit there was no coverage. Following the lawsuit's commencement, Transtate notified Generali of the claim(s) against the insured, but Generali disclaimed any defense or indemnification obligation under its policy and, accordingly, did not participate in the litigation or its settlement. Inasmuch as Transtate had become insolvent, plaintiff Liquidation Bureau, acting through Transtate on behalf of the now-

defunct Rosan, paid both the entire cost of the defense and Rosan's share of the settlement. It thereafter brought this action, seeking partial reimbursement of the defense and indemnification costs it had borne from Generali. The motion court determined that Generali should reimburse plaintiff for half of the defense costs and that, although the insurers' respective indemnification obligations should be prorated according to the length of time each covered the risk, the insurers should, according to their respective rates of proration, together bear responsibility for that portion of the settlement covering the period when there was no insurance coverage. Generali takes issue with these allocations, urging that both its defense and indemnification obligation should have been prorated according to its time on the risk, and that the insured should bear its own defense and indemnification costs, on a prorated basis, for the period during which the risk at issue went uninsured.

We reject Generali's proposed defense cost allocation as inequitable. It is now undisputed that Generali was in fact obligated to defend its insured. Having unjustifiably disclaimed that obligation and left plaintiff to absorb all of the defense costs, Generali may not now have its defense obligation finely tailored to its "time on the risk," particularly where the insured is defunct and there is no reasonable possibility that it will bear any share of the defense costs. Under the circumstances, we see no reason to disturb the motion court's determination to allocate the defense costs equally between plaintiff and Generali.

With respect to indemnification, although it is true that "time-on-the-risk" has been employed to prorate insurers' respective obligations (*see Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208 [2002]; *Serio v Public Serv. Mut. Ins. Co.*, 304 AD2d 167, 168 [2003]), the cited cases do not involve settlements pertaining to risks extending over uninsured periods, and, indeed, no authority is advanced supporting the utilization of the kind of strict proration advocated by Generali in a situation where there are lapses in insurance coverage and the insured is not a viable entity. Significantly, the Court of Appeals stated in *Consolidated Edison (supra)* that its reliance on "time-on-the-risk" proration in that case did "not foreclose pro rata allocation among insurers by other methods" and that "this is not the last word on proration" (98 NY2d at 225). Under the particular circumstances presented, in which plaintiff, in the face of Generali's unjustified refusal to honor its obligations, bore nearly the entire costs of defending and settling the underlying claim against the defunct insured, covering lengthy periods for which there was no applicable coverage, the

proration formula employed by the motion court was manifestly fair and should stand.

Generali's remaining arguments are unavailing. Concur— Mazzarelli, J.P., Andrias and Gonzalez, JJ.

Catterson and Malone, JJ., dissent in a memorandum by Catterson, J., as follows: In 1993, the underlying personal injury action was instituted on behalf of two infants to recover damages caused by their exposure to lead paint. Rosan Realty Corp. (hereinafter referred to as Rosan), an owner of the premises where the alleged exposure occurred, was named as a defendant. Two insurers, Generali Insurance Company (hereinafter referred to as Generali) and Transtate Insurance Company (hereinafter referred to as Transtate) covered the premises during Rosan's ownership from March 1988 to July 1992, when Rosan's interest was extinguished by foreclosure. The corporation itself was dissolved in 1994.

Following the lawsuit's commencement, Transtate notified Generali of the claim against the insured but Generali disclaimed any defense or indemnification obligation under its policy and, accordingly, did not participate in the litigation or its settlement. Inasmuch as Transtate had become insolvent, plaintiff Liquidation Bureau, acting through Transtate on behalf of the now-defunct Rosan, paid both the entire cost of the defense and Rosan's share of the settlement of $600,000.

Subsequently, Transtate brought this action against Generali seeking partial reimbursement of the defense costs of $46,604.84, and the indemnification costs it had borne. The motion court established that of the 50.7 months of total period of risk that Rosan had owned the premises, the property had been insured for 15.7 months, of which Generali was the insurer for 5.5 months and Transtate for 10.2 months. The motion court also found that the property was uninsured for 35 months.

The motion court determined that Generali should reimburse plaintiff for half of the defense costs and that, although the insurers' respective indemnification obligations should be prorated according to the length of time each covered the risk, the insurers should, according to their respective rates of proration, together bear responsibility for that portion of the settlement covering the period when there was no insurance coverage. It thus determined that Generali's share of the defense costs was 50% or $23,302.42 on the grounds of the overarching duty to defend. It also calculated Generali's pro rata share of the settlement at $210,191.08.

In effect, the court used plaintiff's formula for the ratio of time on the risk (in Generali's case, 5.5 months) to the time the

premises had been insured overall (15.7 months) and not as a ratio to the total time that Rosan had owned the property (50.7 months), which would have amounted to $65,088.76 as Generali's pro rata share.

On appeal, Generali takes issue with these allocations, urging that both its defense and indemnification obligations should have been prorated according to its straight time on the risk, and that the insured should bear its own defense and indemnification costs, on a prorated basis, for the period during which the risk at issue went uninsured.

As to the defense cost allocation, we reject Generali's proposal as inequitable. It is now undisputed that Generali was in fact obligated to defend its insured. Having disclaimed that obligation and left plaintiff to absorb all of the defense costs, Generali may not now have its defense obligation finely tailored to its "time-on-the-risk," particularly where the insured is defunct and there is no reasonable possibility that it will bear any share of the defense costs. Under the circumstances, we see no reason to disturb the motion court's determination to allocate the defense costs equally between plaintiff and Generali.

With respect to indemnification, however, a strict "time-on-the-risk" standard has been employed to prorate insurers' respective obligations. (*See Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 NY2d 208 [2002]; *Serio v Public Serv. Mut. Ins. Co.*, 304 AD2d 167, 168 [2003]). While the cited cases do not involve settlements pertaining to risks extending over uninsured periods, and, while the motion court may be accurate in characterizing the instant case as one of first impression in the state courts, nevertheless, similar issues determined in the federal courts offer useful guidance. For example, in *Stonewall Ins. Co. v Asbestos Claims Mgt. Corp.* (73 F3d 1178, 1203 [2nd Cir 1995]), the court, addressing the issue of allocation between an insured and its carriers with respect to periods of exposure where there was no insurance, held that: "a fair method of allocation appears to be one that is related both to time on the risk and the degree of risk assumed. When periods of no insurance reflect a decision by an actor to assume or retain a risk, as opposed to periods when coverage for a risk is not available, to expect the risk-bearer to share in the allocation is reasonable." (Citations omitted.)

In *United States Fid. & Guar. Co. v Treadwell Corp.* (58 F Supp 2d 77 [SD NY 1999]), the court, citing *Stonewall*, applied the "proration to the insured" approach to the "time-on-the-risk" method of allocating liability for indemnity and defense costs between an asbestos installer and its liability insurance

carriers. The court held that liability for continuous asbestos-related injuries would be allocated between comprehensive general liability insurers and the insured, as a self-insurer, during the periods it had no insurance, on a pro rata basis, according to the years on the risk, reasoning as follows:

"Treadwell made a decision to go without insurance for the years prior to 1967, and this decision should have consequences. Otherwise, Treadwell would receive the same treatment as an identically situated company that chose to purchase insurance for the full period. . . .

"Accordingly, Treadwell is obligated to contribute toward payment of the Asbestos Claims based on the number of years it was uninsured." (*Id.* at 104-105.)

In the instant case, appellant contends that, since the record reveals that Rosan was uninsured during the bulk of the period of risk, the compelling inference is that its decision to carry no insurance was a conscious one. The argument is persuasive, especially as Transtate does not point to any evidence in the record suggesting otherwise or that Rosan was unable to obtain coverage. Likewise, plaintiff's assertion that the foregoing federal cases did not involve insureds who were no longer viable entities is a weak attempt to distinguish them. As appellant contends, Rosan was still a viable corporation at the time of the commencement of the action, and remained so for another fourteen months. Generali, thus, asserts that Transtate had ample opportunity to seek contribution from Rosan.

In any event, the viewpoint that to rule in Generali's favor would simply encourage insurers to disclaim coverage and sit on the sidelines is less compelling than the viewpoint that to prorate Generali's share of the settlement to cover the uninsured portion of the risk period will encourage entities like Rosan to be even less diligent about insurance coverage.