OPINION OF THE COURT
Richard F. Braun, J.
These are the findings of fact and conclusions of law in phase II of a 40-day nonjury trial in this declaratory judgment class action concerning insurance coverage for defendant Robert A. Keasbey Company in more than 10,000 underlying asbestos personal injury actions pending in Supreme Court, New York County. The findings and conclusions of phase I (16 Misc 3d 223 [Sup Ct, NY County 2007]) are incorporated by reference to the extent that they are material to phase II. Those unopposed and agreed to findings and conclusions proposed by the parties for *731 phase II are also incorporated herein, pursuant to stipulation of three of the four sides in this action,[1] and because of the agreements and lack of opposition to those proposals. The court is stating here those findings that it deems to be essential (CPLR 4213 [b]).
In phase I, the court made many declarations, including that generally the underlying asbestos personal injury actions do not fall under the products hazard aggregate limits of the insurance policies issued by the insurer plaintiffs and defendants for the insured, defendant Keasbey, which is a defunct asbestos insulation company (16 Misc 3d at 232). The court further declared that the products aggregate limits of plaintiffs’ primary policies and one excess policy, but not of another excess policy, were exhausted (16 Misc 3d at 233, 249-250). The court also made declarations in phase I as to defendant One Beacon America Insurance Company, including that the obligations in its policies as to indemnification and defense are limited to exposures to a defendant Keasbey asbestos-containing product at Indian Point Units 2 and 3 (16 Misc 3d at 252), which sites defendant One Beacon had insured in two wrap-up insurance policies, and that pending claims against defendant Keasbey at other sites are not covered under defendant One Beacon’s subject policies. (Id.) The court further declared that not all claims raised by the underlying plaintiffs in the asbestos personal injury actions (the underlying plaintiffs) fall under the products hazard or completed operations limits under plaintiffs’ and defendant One Beacon’s subject insurance policies (16 Misc 3d at 232-233, 257), and thus the claims may be subject to unlimited premises/ operations coverage, up to each policy’s occurrence limits.
The parties stipulated as to what issues would be tried in phase I and which in phase II (16 Misc 3d at 226). The stipulation was incorporated in a subsequent order proposed by the parties. By subsequent stipulation, the parties agreed that the fifth, sixth, and seventh causes of action of the complaint remained to be decided after phase I, including “(a) allocation and (b) adjudication of any duty to defend and [plaintiffs’] damages claims, if any.”[2]
*732 Plaintiffs’ policies and those of defendant Wausau (except for its adding the word “Coverage” before “A.”) state:
“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
“A. bodily injury . . .
“to which this insurance applies caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any such suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.”
An “occurrence” is defined in the policies as “an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury.”
Defendant One Beacon’s policies provide:
“Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy, the company shall:
“(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.”
Defendant One Beacon’s policy OLE14-9027-023 provides:
“IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THIS POLICY APPLIES ONLY TO WORK PERFORMED AT THE PROJECT DESCRIBED AS FOLLOWS:
“J.O. 9321-01
“CONSTRUCT INDIAN POINT NUCLEAR POWER PLANT-UNIT #2 AND ALL OPERA *733 TIONS INCIDENTAL THERETO AT BUCHANAN,
NEW YORK.”
Defendant One Beacon’s policy CLE14-9027-037 provides:
“IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS AGREED THIS POLICY APPLIES ONLY TO WORK PERFORMED AT THE PROJECT DESCRIBED AS FOLLOWS:
“J.O. 9321-05
“CONSTRUCT INDIAN POINT NUCLEAR POWER PLANT-UNIT #3 AND ALL OPERATIONS INCIDENTAL THERETO AT BUCHANAN, NEW YORK.”
Pursuant to defendant One Beacon’s policies, there is only coverage for occurrences during the policy period of each policy.
Plaintiffs argue that the following provision in the policies of defendant One Beacon means that it must provide all defense costs, and plaintiffs none: “If the insured has other insurance against a loss covered by this policy, this policy shall be primary insurance and the amount of the company’s liability under this policy shall not be reduced by the existence of such other insurance.” However, that clause only makes defendant One Beacon primary as to coverage losses (“against a loss covered by this policy”), not as to reimbursement for defense costs. The policies of defendant One Beacon define pertinent loss as “all sums which the insured shall become legally obligated to pay as damages because of bodily injury, illness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.” By endorsement, the word “occurrence” was substituted for “accident” (16 Mise 3d at 253). Reimbursement of defense costs arises due to circumstances outside the policies: the failure of other insurers to fulfill their obligations to defend the insured under their policies.
In plaintiffs’ sixth cause of action, they seek declarations as to plaintiffs’ and the insurer defendants’ duties to defend. Such duty of an insurer is broader than its duty to indemnify (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 655 [1993]). The duty of an insurer to defend its policyholder is extremely broad, and a defense must be afforded whenever a complaint’s allegations show or even suggest that coverage is reasonably possible under the policy’s terms (see BP A.C. Corp. v One Beacon Ins. Group, 8 NY3d 708, 714 [2007]). The duty to defend arises where the insurer knows that there are facts that establish a reasonable possibility that there is coverage under *734 the policy (Frontier Insulation Contrs. v Merchants Mut. Ins. Co., 91 NY2d 169, 175 [1997]). The insurer is duty-bound to defend the entire action if any of the claims therein are potentially covered by the insurance policy. (Id.)
In Supreme Court, New York County, the underlying asbestos personal injury actions are governed by a case management order that was promulgated by Justice Helen Freedman. The case management order provides for standardized form complaints, which have no factual allegations as to individual underlying plaintiffs and do not supply any information as to the specific work locations or periods of time that the underlying plaintiffs were allegedly exposed to asbestos. The standardized form complaints merely allege exposure to asbestos while an underlying plaintiff was working with or near asbestos-containing products supplied by the underlying defendants. Each complaint is supposed to have annexed to it a standardized plaintiffs initial fact sheet, which supplies information about work sites and time periods.[3] However, often the fact sheets are not filled out, and, when they are, they sometimes leave out portions or contain very vague information, and the information included regarding work sites almost always changes during the course of the litigation, including during discovery.
Thus, contrary to the arguments of defendant One Beacon, its site- and time-specific policies are implicated by the standardized form complaints because there is a reasonable possibility that the allegations are covered under defendant One Beacon’s policies. If defendant One Beacon’s position that the allegations of the complaints are insufficient to provide coverage under defendant One Beacon’s policies was correct, then the same would be true as to plaintiffs’ policies, and defendant Keasbey would not receive its bargained for insurance defense from any insurer if all of them chose not to defend. If an insurer can show “as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision,” then the *735 insurer would not have any duty to defend the insured. (Allstate Ins. Co. v Zuk, 78 NY2d 41, 45 [1991] [citations omitted].) Thus, if at some point either insurer defendant can demonstrate that in a particular underlying action, then its duty to defend would end in that action. The same would hold true for plaintiffs.
Plaintiffs contend that defendant One Beacon should reimburse plaintiffs for all of their costs in defending the underlying actions. Defendant One Beacon argues that only post-tender defense costs should be shared, according to its proposed formula of allocating an Indian Point fractional share as determined by the number of sites where Keasbey-caused asbestos exposure is alleged, and then apportioning among those insurers who issued policies covering Indian Point a fractional share by applicable limits.
Both plaintiffs and defendant One Beacon are wrong. Plaintiffs chose to fulfill their obligation to defend, and defendant One Beacon elected not to uphold its own responsibility to do so. Plaintiffs expended costs in defending. Under the policies of plaintiffs and defendant One Beacon, each had a duty to defend, and thus the defense costs should be shared equally (see State of N.Y. Ins. Dept, Liquidation Bur. v Generali Ins. Co., 44 AD3d 469, 470 [1st Dept 2007], appeal withdrawn and discontinued 9 NY3d 1030 [2008]; Impulse Enters./F & V Mech. Plumbing & Heating v St. Paul Fire & Mar. Ins. Co., 282 AD2d 266, 268 [1st Dept 2001]; American Empire Ins. Co. v PSM Ins. Cos., 259 AD2d 341, 343 [1st Dept 1999]; National Union Fire Ins. Co. of Pittsburgh, Pa. v Hartford Ins. Co. of Midwest, 248 AD2d 78, 86 [1st Dept 1998]).
Both plaintiffs’ and the insurer defendants’ duties to defend arose when each underlying personal injury action was commenced, not upon notice by tender to defendant One Beacon by plaintiffs, as that defendant argues (see HRH Constr. Interiors, Inc. v Royal Surplus Lines Ins. Co., 16 AD3d 115, 117 [1st Dept 2005]; cf. Bovis Lend Lease LMB, Inc. v Royal Surplus Lines Ins. Co., 27 AD3d 84, 94 [1st Dept 2005] [where one insurer defended an underlying action but another should have solely defended under the circumstances, only the latter company was responsible to reimburse defense costs from the date that the former company tendered the defense]). Plaintiff and defendant One Beacon stood in the same position as to defending defendant Keasbey in the underlying actions. There is no reason why plaintiffs should be the ones to have any responsibility to take on the defense of defendant Keasbey and then tender to defen *736 dont One Beacon to start its responsibility to defend, especially where defendant Keasbey was defunct and would not itself tender to any insurer.
Therefore, this court will declare on plaintiffs’ sixth cause of action that plaintiffs and the insurer defendants had and have an equal duty to defend defendant Keasbey up to each insurer’s available policy limits (see 16 Misc 3d at 227, 232, 233, 249-251) in every underlying personal action; and that the duty would end for either insurer defendant or plaintiffs if they can establish that the asbestos exposure by defendant Keasbey to the underlying plaintiff did not occur at a covered work site and/or within the covered time period of the applicable policies.[4]
Plaintiffs request in the wherefore clause of their sixth cause of action that this court declare “the appropriate reimbursement with interest on some or all defense costs incurred by [plaintiffs] on certain claims.” The court cannot declare “the appropriate reimbursement” because it has not been shown what amount(s) that would be, although some evidence was introduced and discussed in the post-trial submissions. As the court cannot determine from the evidence what would be the appropriate amount of reimbursement to declare, if the parties cannot settle this issue[5] plaintiffs will have to seek specific amounts of reimbursement in another action.
As to plaintiffs’ request for interest from defendant One Beacon, plaintiffs defended defendant Keasbey in underlying personal injury actions, and defendant One Beacon chose not to participate. Defendant One Beacon had the benefit of holding on to its funds while plaintiffs expended theirs. Plaintiffs are entitled to interest from defendant One Beacon, pursuant to CPLR 5001 (a) (cf. North Riv. Ins. Co. v United Natl. Ins. Co., 172 AD2d 46, 52 [1st Dept 1991] [interest on part of the settlement amount in the underlying personal injury action was awarded to the insurer that paid for the settlement from another insurance company that was found to be liable to pay part of the settlement], revd on other grounds 81 NY2d 812 [1993]), and the court will declare to that effect.
Plaintiffs ask that this court declare in their fifth cause of action “the appropriate allocation of indemnity obligations, if any, *737 to the [subject] Policies and to other periods.” In their seventh cause of action, plaintiffs request declarations that they “need not pay indemnity for any bodily injury due to exposure at sites excluded from coverage by the Policies; the appropriate allocation of amounts owed due to exposures partly at excluded sites; and the scope of [plaintiffs’] duty to defend, if any, at excluded sites.”
The issues of allocation concern how to allocate losses over the various triggered insurance policies of the insurer plaintiffs and defendants, and for the periods of time where defendant Keasbey either had no insurance or was insured by a now defunct insurance carrier. This court held in phase I that coverage is triggered by exposure to asbestos during the policy periods (16 Misc 3d at 241).
Allocation of coverage under various insurance policies that were in place when the underlying plaintiffs were exposed to asbestos by defendant Keasbey should be made by looking to the subject policies (see BP A.C. Corp., 8 NY3d at 716). Defendant Keasbey bargained for insurance coverage for specified oc-,currences causing injuries during certain time periods, and paid premiums to insurers for policies that afforded that coverage to defendant Keasbey. Certain site exclusions were included in some of the policies.
The class defendants argue that allocation among insurance policies should be joint and several. Plaintiffs and the insurer defendants contend that allocation should be pro rata. Where, as here, there are multiple insurers affording coverage over various periods, and the harm caused under the policies occurred continuously over those periods, allocation is to be done on a pro rata basis due to the policy provisions for payment of “all sums” or “all damages” for occurrences “during the policy period” (see Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d 208, 224 [2002]; Generali, 44 AD3d at 470-471).
Given that there is no way of knowing for sure when an asbestos-caused disease actually begins, that is the fairest way of allocating coverage, and so as to not have an unusually, overly complicated formula of proration, it should be done evenly per year of site exposure. Where a site is excluded under an insurer’s policy, then that insurer will not have to provide coverage for that site for the excluded time period. So, for example, if an underlying plaintiff was exposed to asbestos at Indian Point Units 2 and/or 3 for two years and other sites for 18 years, then the coverage will be allocated 10% for Indian Point Units 2 *738 and/or 3 and 90% for the other sites. The court will declare as to such a method of allocation (see Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d at 224-225).
Each policy of plaintiffs and the insurer defendants provides that the policy will afford primary coverage. However, the clause in defendant One Beacon’s policies that “the amount of the company’s liability under this policy shall not be reduced by the existence of such other insurance” means that the policies of defendant One Beacon will be primary above the policies of plaintiffs and any other insurance companies covering exposures at Indian Point Units 2 and/or 3. The provision in plaintiffs’ policies that plaintiffs “shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy bears to the total applicable limit of liability of all valid and collectible insurance against loss” only sets maximum coverage for plaintiffs’ policies. Given defendant One Beacon’s provision, the maximum will not be reached until after defendant One Beacon’s policies are applied before reaching plaintiffs’ policies at all. Therefore, for any underlying action for which defendant One Beacon would be liable to cover any loss due to asbestos exposure to an underlying plaintiff at Indian Point Units 2 and/or 3, defendant One Beacon’s coverage would be primary over plaintiffs’ coverage to the extent of the coverage under defendant One Beacon’s policies. Once the limits under defendant One Beacon’s policy would be used up to cover the claim of an underlying plaintiff, then the coverage responsibilities of plaintiffs and defendant One Beacon should be evenly allocated based on their “time on the risk” (Consolidated Edison Co. of N.Y. v Allstate Ins. Co., 98 NY2d at 225).
There was another insurer who issued insurance policies from 1946 through 1968 covering defendant Keasbey for asbestos claims: American Mutual Insurance Company. That insurance company was liquidated. Defendant Keasbey had no insurance coverage at all for asbestos claims after 1987. The class defendants contend that plaintiffs and defendant One Beacon should cover claims for those time periods: 1946 to 1968 and after 1987. Plaintiffs’ and the insurer defendants’ positions are that they should not because they did not provide insurance for those periods and because defendant Keasbey paid no premiums to plaintiffs and defendant One Beacon for any such coverage.
Plaintiffs and the insurer defendants are correct. They should only be responsible for their time on the risk, which is all that defendant Keasbey bargained and paid premiums for. If *739 the conclusion were otherwise, hypothetically an underlying plaintiff, who was exposed to defendant Keasbey’s asbestos at Indian Point from 1946 through 1990, would be afforded coverage for a period well beyond what was contracted for in the policies of defendant One Beacon and plaintiffs. Plaintiffs and defendant One Beacon should not be forced to pick up coverage for periods where defendant Keasbey chose to obtain an insurance policy with an insurance company that became defunct through no fault of plaintiffs or defendant One Beacon, and plaintiffs and defendant One Beacon should not be forced to become a guarantor for the insolvent insurance company (cf. Ambassador Assoc, v Corcoran, 143 Misc 2d 706, 710 [Sup Ct, NY County 1989] [where the court held that a secondary excess insurer had to provide coverage where the primary carrier became insolvent]). Thus, where exposure includes periods for which defendant Keasbey was covered by the American Mutual Insurance Company, the insolvent insurer, or was uninsured, those periods have to be included in allocating and charged to defendant Keasbey (see Sybron Transition Corp. v Security Ins. of Hartford, 258 F3d 595, 598 [7th Cir 2001]; Olin Corp. v Insurance Co. of N. Am., 221 F3d 307, 322-327 [2d Cir 2000]; AAA Disposal Sys., Inc. v Aetna Cas. & Sur. Co., 355 Ill App 3d 275, 287, 821 NE2d 1278, 1290 [2005]).
This court followed the Appellate Division’s holding in Generali as to equal sharing of the costs of defending (see above), but the holding does not change the result here as to indemnification. In Generali, the plaintiff, the State Liquidation Bureau, took on the entire obligation for defense and the defunct insured’s share of the settlement. The insured had no coverage for part of the period of risk and became defunct, like defendant Keasbey here. However, because the plaintiff there paid for all of the defense costs and settlement, the defendant insurer, whose policy also covered part of the period at issue but totally abdicated the responsibilities to defend and cover, had to pay its share for the entire period at issue, including the uninsured period. If plaintiffs here had similarly paid for such a time period of nonavailable coverage or uninsurance, then defendant One Beacon would have no cause for complaint as to the amount of any judgments or settlements paid because defendant One Beacon gave up its right to complain by failing to participate in defending (just as defendant One Beacon has no justifiable complaint as to the amount that said defendant will have to share of the costs of defending the underlying plaintiffs), but *740 there is no showing that plaintiffs have made any payments for any periods covered by the insolvent insurer or when not insured. If there were any such payments, then defendant One Beacon would have an obligation like the defendant in Generali. Here, there remain outstanding obligations to underlying plaintiffs, including settlements by way of promise to pay agreements, that are contingent on the outcome of those underlying actions, which will have to be covered under the pro rata formula discussed above.
Finally, plaintiffs need not pay any indemnity for any bodily injury due to asbestos exposure at sites that are excluded from coverage by plaintiffs’ policies. No allocation for plaintiffs should be included for such sites because plaintiffs were not “on the risk” under their policies for such sites. Thus, the court will declare to that effect. The court will declare as above generally regarding “the appropriate allocation of amounts owed due to exposures partly at excluded sites,” but will not declare as to any specific amounts because the evidence and post-trial submissions were insufficient to support such a declaration. The court will declare that plaintiffs have no duty to defend in actions for exposure at excluded sites, but, if an underlying action includes exposures at such a site along with a site covered under one or more of plaintiffs’ policies, then plaintiffs must defend in the action (see discussion above).

. Defendant Employers Insurance Company of Wausau, which settled with plaintiffs, did not sign the stipulation.

. In their post-trial submissions, defendant One Beacon and the class defendants ask for certain declarations in phase II. None of those will be made. The only subjects of phase II of the trial, to which the parties stipu *732 lated, were some of plaintiffs’ causes of action. The court has only decided those issues, as limited by the complaint, the proof at trial, and the post-trial submissions.

. In its supplemental proposals, defendant One Beacon cites to the part of the trial transcript where a portion of the transcript of the deposition of plaintiffs’ phase II witness was read. First, the actual statement by the witness in the trial transcript is more inclusive than what is provided in the supplemental proposals, including particularly that the word “normally” from line 2 of page 239 of the trial transcript is left out of the proposals by defendant One Beacon. Second, just because the plaintiffs initial fact sheets are normally served, that does not mean that they are filled out sufficiently or at all.

. Plaintiffs and defendant Wausau settled, and of course the terms of their settlement must be taken into account by the parties.

. Plaintiffs suggested in their post-trial submissions that the parties confer to endeavor to agree on the amount and form of judgment, which the court encourages.