OPINION OF THE COURT
Bellacosa, J.
Allstate Insurance Company seeks a declaratory judgment that it has no duty to defend or indemnify its insured, William Zuk, in a wrongful death action arising out of the death of Zuk’s friend, Michael Smith, whom Zuk shot and killed. On November 2, 1985, Zuk was cleaning and loading a shotgun in a hunting lodge owned by his parents, Benedict and Margaret Zuk. The gun accidentally discharged and Smith, who was sitting a few feet away from Zuk, was shot in the thigh, severing his femoral artery. He subsequently bled to death. Zuk was charged with second degree manslaughter and was convicted on his guilty plea of recklessly causing Smith’s death (Penal Law § 125.15 [1]). Allstate argues that Smith’s death is not covered under the homeowner’s liability policy at issue because the policy excludes injuries that could "reasonably be expected to result” from criminal acts. Allstate contends that Zuk’s conviction conclusively establishes this exclusionary element.
We hold that Zuk’s criminal conviction does not collaterally block the civil litigation of the issue whether Smith’s death could "reasonably be expected to result” from Zuk’s acts. Under this policy provision, in the factual context of this dispute and its procedural framework, that issue cannot be resolved as a matter of law. We therefore reverse the order of the Appellate Division granting summary judgment to Allstate.
Respondent Patricia Smith, individually and as administra *44 trix of the estate of Michael Smith, commenced a wrongful death action against Zuk alleging that he "carelessly, recklessly and negligently operate[d] [a] shotgun” causing Michael Smith’s death. Zuk sought defense and indemnification from Allstate under a homeowners’ liability policy issued to his parents, the owners of the premises where the accident occurred. The policy covered Zuk as a resident of his parents’ household. Under the policy, Allstate agreed to "pay all sums arising from an accidental loss which an insured person becomes legally obligated to pay as damages because of bodily injury [or resulting death] or property damage covered by this part of the policy” (emphasis supplied). Excluded from coverage was "bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact intended by an insured person” (emphasis supplied).
Allstate initially agreed to defend but not indemnify Zuk, based on the interplay of the policy exclusion and Zuk’s criminal conviction. Allstate then commenced this action seeking a judgment against Zuk, his parents, and Patricia Smith, relieving it of its defense and indemnification obligations and declaring the rights, duties and obligations of the parties. Supreme Court denied Allstate’s motion for summary judgment, concluding that a material issue of fact existed— namely, whether Smith’s death could, as referenced to the insurance policy clause, "reasonably be expected to result” from Zuk’s mishandling of the shotgun. The Appellate Division reversed and granted Allstate summary judgment. That court held that Zuk’s guilty plea in the criminal proceeding established as a matter of law that Smith’s death was caused by a criminal act and therefore Zuk was collaterally estopped from contesting that conclusively determined issue in this civil action. This Court granted leave to appeal and we now reverse.
An insurer has a duty to defend its insured in a pending lawsuit when the complaint alleges a covered loss or when the insurer has actual knowledge of facts establishing the reasonable possibility of coverage (see, Fitzpatrick v American Honda Motor Co., 78 NY2d 61; Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66, rearg denied 74 NY2d 893; Meyers & Sons Corp. v Zurich Am. Ins. Group., 74 NY2d 298). The complaint in the underlying wrongful death action in this case asserts a cause of action based in part on negligence. Under the policy at issue, Allstate agreed to defend suits brought *45 against its insured for "covered damages”, i.e., arising from an accidental loss. Thus, the complaint alleges a potential basis for coverage and, consequently, gives rise to a duty to defend.
However, an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision (see, Villa Charlotte Bronte v Commercial Union Ins. Co., 64 NY2d 846, 848; Spoor-Lasher Co. v Aetna Cas. & Sur. Co., 39 NY2d 875, 876). The policy clause germane to the resolution of this case covered accidental losses unless they could "reasonably be expected to result” from a criminal act. Therefore, Allstate would be entitled to summary judgment declaring that it has no duty to indemnify Zuk, and consequently no duty to defend him in the pending wrongful death action, only if it established as a matter of law that Smith’s death was, in the legal sense intended by the policy clause, reasonably expected to result from Zuk’s actions which eventuated into a criminal charge and conviction.
Allstate argues that Zuk’s second degree manslaughter conviction establishes as a matter of law that Zuk reasonably expected that his acts would cause Smith’s death. In limited circumstances, a particular issue expressly or necessarily decided in a criminal proceeding may be given preclusive effect in a subsequent affected civil action (see, Matter of Nassau Ins. Co. [Bergen — Superintendent of Ins.], 78 NY2d 888 [decided today]; D’Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, 664; Vavolizza v Krieger, 33 NY2d 351; S. T. Grand, Inc. v City of New York, 32 NY2d 300, rearg denied 33 NY2d 658). Parties may avail themselves of collateral estoppel if the issue is identical in both actions, necessarily decided in the prior criminal action and decisive in the civil action, provided, however, that the party ousted from a day in court by application of collateral estoppel had a full and fair opportunity in the prior action to litigate the now-foreclosed issue (see, D’Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659, supra).
As the Appellate Division recognized, Zuk’s criminal conviction established that Smith’s death was caused by a criminal act. Under the terms of Allstate’s exclusionary clause, however, the inquiry does not stop with the determination that the loss resulted from a criminal act. In order for the exclusion to contradict coverage, the loss must be one that could *46 "reasonably be expected to result” from the criminal act, a phrase subject to a variety of different meanings in a civil versus criminal elision.
Zuk’s conviction of second degree manslaughter was necessarily based on a finding that he recklessly caused Smith’s death (Penal Law § 125.15 [1]). A person acts recklessly, in a criminal context, when that person is aware of and consciously disregards a substantial and unjustifiable risk of a result, where the risk is of such a nature and degree that to disregard it constitutes a gross deviation from the standard of conduct of a reasonable person (Penal Law § 15.05 [3]).
While an almost metaphysical argument can be mounted that disregarding a known risk of death — the criminal standard — is equivalent to reasonably expecting that death will occur as a result of the action taken — the standard expressed in the policy — the particular matrix of this policy clause and factual context allow at least one other reasonable, and therefore disqualifying, syllogism. A person may engage in behavior that involves a calculated risk without expecting — no less reasonably — that an accident will occur. Such behavior, which may be reckless for criminal responsibility purposes, does not necessarily mean that the actor reasonably expected the accident to result (see, McGroarty v Great Am. Ins. Co., 36 NY2d 358, 363, rearg denied 36 NY2d 874; General Acc. Ins. Co. v Manchester, 116 AD2d 790, 792; Continental Ins. Co. v Colangione, 107 AD2d 978, 979). People classically seek insurance coverage for just such circumstances. That the accidental discharge of the shotgun Zuk was cleaning actually resulted in Smith’s death, and that his conviction for manslaughter by statutory definition requires the result of death as an element of the crime, do not establish as a matter of law that Zuk reasonably expected Smith’s death to result from his actions. Under the terms of this exclusion clause, whether a result is reasonably expected should be gouged as of the time and circumstances of the conduct engaged in by the particular actors, not attributed in hindsight based on an eventual criminal conviction, if any.
In sum, the issue whether Smith’s death could "reasonably be expected to result” from Zuk’s acts was not necessarily determined in the criminal proceeding and was not identical to the issues that were determined there. Thus, Allstate should not be permitted to use collateral estoppel to deprive the Zuks of their only opportunity to determine the effect, if *47 any, of the conviction with its distinctively defined elements on the applicability of the exclusion clause.
Under these facts, this policy and this analysis, the issues in the criminal and civil actions are not identical, a core feature which distinguishes this case from the cases in which we held that an insured, or a subrogee, was collaterally estopped by the insured’s conviction of an intent crime from relitigating the identical issue of intent in an insurance coverage dispute where the policy at issue excluded coverage for intentional acts (see, D’Arata v New York Cent Mut. Fire Ins. Co., 76 NY2d 659, supra; Matter of Nassau Ins. Co. [Bergen — Superintendent of Ins.], 78 NY2d 888, supra). The policies at issue in those cases, with differently expressed exclusion clauses, excluded intentional acts, mirroring the culpable mental state of a criminal intentional act. Thus, the issue of intent was identical in the criminal and insurance coverage actions and necessarily decided in the criminal proceeding. Here, in contrast, Allstate chose to incorporate into its exclusion policy clause a standard not found in the Penal Law — reasonably expected to result — without further defining those terms. It is not possible or appropriate to decide, as a matter of law, the issue whether Smith’s death could "reasonably be expected to result” from Zuk’s actions.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the plaintiff’s motion for summary judgment denied.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, and Hancock, Jr., concur.
Order reversed, etc.