OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
Walter Shapiro was insured under a comprehensive personal liability homeowner’s policy issued by Nassau Insurance Company, which is now in liquidation. The policy provided that Nassau would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence”. Occurrence *890 was defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury [or death resulting from an injury] or property damage neither expected nor intended from the standpoint of the insured” (emphasis added). Excluded from coverage was injury or destruction "caused intentionally by any insured” (emphasis added).
On July 6, 1982, during the term of the policy, Shapiro shot two neighbors, seriously wounding Suzellen Bergen and killing Ann Messineo. Shapiro was indicted for second degree murder, second degree attempted murder and criminal possession of a firearm. He elected to be tried without a jury and raised only the affirmative defense of extreme emotional disturbance, a mitigatory rather than exculpatory approach. Shapiro was convicted of first degree manslaughter, attempted manslaughter and the weapons offense.
Bergen and Marie Palmiotto, as executrix of the estate of Ann Messineo, filed claims against Shapiro’s homeowner’s policy. The Superintendent of Insurance, as liquidator, disallowed the claims on the ground that Shapiro’s criminal conviction triggered and resolved, adversely to the claimants, the policy’s exclusion for intentional acts. Bergen then obtained summary judgment in a civil action against Shapiro based on the collateral estoppel effect of Shapiro’s criminal conviction. Palmiotto had a separate civil suit pending against Shapiro. After Bergen obtained summary judgment, Bergen, Palmiotto and Shapiro executed a stipulation as to damages resolving both suits.
Claimants then brought a proceeding in Supreme Court to declare Nassau’s responsibility under the policy to pay the judgments. The court-appointed Referee ruled against claimants based on collateral estoppel and recommended that the Superintendent’s disallowance decision be sustained and the claims dismissed. Supreme Court denied the Superintendent’s motion to confirm the Referee’s report and granted the claimants’ cross motions to disaffirm. It concluded that a finding of intent in a criminal context is not dispositive in determining whether an act was "intentional” for insurance coverage purposes, and refused to collaterally estop the claimants from relitigating the issue of Shapiro’s intent. The Appellate Division reversed and confirmed the Referee’s report. This Court granted leave to appeal to the claimants and we now affirm.
Shapiro’s conviction for first degree manslaughter and attempted manslaughter necessarily embraces the salient ele *891 ment of those crimes, which is intent to cause the death of another person. The identical issue is at the core of this insurance coverage dispute. Thus, the criminal finding of intent is conclusive, for purposes of determining whether their injuries and death are excluded from coverage under the Nassau policy because they were "intended or expected” or "caused intentionally”, as those terms are used in the policy at issue (see, D'Arata v New York Cent. Mut. Fire Ins. Co., 76 NY2d 659; compare, Allstate Ins. Co. v Zuk, 78 NY2d 41 [decided today]).
Claimants argue that the D'Arata collateral estoppel rationale does not apply to this case because the evidence of Shapiro’s mental disability introduced at the criminal trial negates the "identical issue” requirement for application of collateral estoppel. That Shapiro successfully proved by a preponderance of the evidence in the criminal proceeding that he acted under the influence of extreme emotional disturbance, however, does not nullify the collateral estoppel effect of the finding of criminal manslaughter intent. Extreme emotional disturbance, unlike insanity, only mitigates criminal responsibility by reducing murder to manslaughter in the first degree. It does not in any way affect the factual finding of intent. Rather, it merely explains the defendant’s intentional actions and, if the fact finder accepts the affirmative defense and convicts of the lesser intent crime, confirms beyond a reasonable doubt that the defendant nevertheless acted intentionally (People v Patterson, 39 NY2d 288, 302).
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs, in a memorandum.